UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

YVETTE CRUZ-COMAS,

                    Plaintiff,                    **COMPLAINT**

-against -                                 **Index No.:**

                                                         **Jury Trial Demanded**

**WILLIAMSBURG MEDICAL IMAGING, PC,
RADIOLOGY ASSOCIATES OF
BROOKLYN, LLP, MOTTY LANDAU and
JUDY TWERTSKY**

                    Defendant(s).

-------------------------------------------------------------X

        **YVETTE CRUZ-COMAS**, by and through her attorneys at **FLORESTAL LAW FIRM, PLLC**, as and for her Complaint against the above-named **DEFENDANTS**, alleges as follows:

## I.    INTRODUCTION

1. This is an action brought for employment discrimination based on hostile work environment and sexual harassment pursuant to the Title VII of the Civil Rights Act of 1964, as codified under (hereinafter "Title VII") as codified in 42 U.S.C. §2000e *et seq*., and New York State Human Rights Law (hereinafter "NYSHRL"), N.Y. Executive Law § 296, *et seq*., New York City Administrative Code (hereinafter "NYCHR") N.Y. Administrative Code, Title 8, including aiding and abetting discriminatory conduct, negligent supervision and training, intentional and negligent infliction of emotional distress, and constructive discharge.

## II.    JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and any related claims under New York Law.

3. This Court has supplemental jurisdiction over the NYSHRL, and any New York State common law claims pursuant to 28 U.S.C. § 1367.

4. This action properly lies in the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391, as the alleged unlawful acts occurred in Kings County, State of New York.

5. Plaintiff has fulfilled all of her conditions precedent obligations by timely filing an administrative charge with the Equal Employment Opportunity Commission and received a ninety-day (90) right to sue letter, dated August 9, 2024, to commence suit. Plaintiff is within her ninety-day (90) filing period to file suit.

### III. PARTIES

6. YVETTE CRUZ-COMAS ("Ms. Comas" or "Plaintiff") is a member of a protected class because of her sex, in that she is female, and at all times relevant, worked in Brooklyn, New York.

7. WILLIAMSBURG MEDICAL IMAGING, PC ("Defendant WMI" or collectively "Defendants") is a domestic professional service corporation organized and existing under the laws of the State of New York, with its principal place of business at 762 Bedford Avenue, Brooklyn, New York, 11205 and was Plaintiff's employer during the relevant time period.

8. RADIOLOGY ASSOCIATES OF BROOKLYN, LLP ("Defendant RAB" or collectively "Defendants") is a domestic limited liability partnership organized and existing under the laws of

the State of New York, with its principal place of business at 2021 Avenue X, Brooklyn, New York, 11235 and was Plaintiff's employer during the relevant time period.

9. MOTTY LANDAU was the President and Chief Executive Office for Defendant WMI during the relevant time period.

10. JUDY TWERTSKY was Plaintiff's manager at WMI and RAB during the relevant time period.

### IV. FACTS

11. Ms. Comas began working for Defendant WMI in September 2013 as a call center employee, and eventually worked her way up to front desk manager in a short span of time.

12. Upon information and belief, sometime in 2020, Defendants WMI and RAB merged their resources, co-locating at 762 Bedford Avenue, Brooklyn, New York 11205. Both Defendants' management teams managed Plaintiff's work duties and Plaintiff booked patient visits for both Defendants.

13. In July 2022, one of Plaintiff's co-workers, an x-ray technician named Angel began making unwanted sexual advances toward her.

14. For example, Plaintiff was often responsible for closing the clinic, so she was required to be the last one in the office in order to lock up. Angel would purposely stay behind so that he could be alone with Plaintiff. On one such occasion, Angel came out of the x-ray room wearing only his underwear and stated to Plaintiff "do you like what you see?"

15. On another occasion occurring in August 2022, Angel asked Plaintiff to check out his cheetah tattoo and took off his shirt to expose it to her while saying "I can be your cheetah."

16. On multiple occasions, Angel tried to touch Plaintiff's hair and neck without her approval. Angel used such excuses as "you had something in your hair," or "I was just fixing your shirt." The physical touching made Plaintiff very uncomfortable, and she instructed Angel not to touch her.

17. Plaintiff was very disturbed by Angel's sexual overtures toward her, she reported all of the incidents to managers Chaya Aronovitch and Judy Twertsky. Ms. Aronovitch constantly apologized for Angel's actions and told Plaintiff to "please be patient; we don't have coverage; just keep your distance."

18. Instead of disciplining Angel, Ms. Twertsky stated to Plaintiff "If you can't work with [Angel] then you can go home." As Plaintiff was an hourly employee, every time she left early out of fear for her safety, she would not be paid.

19. On multiple occasions Plaintiff walked in on Angel with his penis out, urinating in inappropriate places in the office. Plaintiff once walked in on Angel in the x-ray room as he was urinating in a patient's urination cup. That made Plaintiff very uncomfortable, and she reported him to management again.

20. Soon after Plaintiff complained about Angel urinating in inappropriate places, he put up a sign in his x-ray room that read threateningly "he would kill whoever kept messing with him." That made Plaintiff extremely fearful for her safety.

21. Although the threatening sign was open and obvious, management did not address Plaintiff's concerns about her safety, and failed to make Angel take the sign down. Plaintiff had many sleepless nights after Angel put up the threatening sign, and her relations at home with her family were greatly impacted due to the stress that the signed caused her at work. Plaintiff's

husband had to constantly console her, as she would stay up at night, worrying about what might happen to her at work the next day.

22. In September 2022, Plaintiff confronted Angel about him having female patients unnecessarily disrobe for minor medical procedures, which was inappropriate. For example, Angel made female patients disrobe and put on a patient's gown even if they were scheduled to have an elbow x-ray, which did not require the entire body to be exposed. Angel became verbally and physically abusive when Plaintiff confronted him with that issue.

23. Specifically, Angel yelled at Plaintiff and threw an object across the room in her direction that narrowly missed her and proceeded to slam the door as Plaintiff ran out of the room to avoid being struck.

24. Plaintiff was so emotional after this incident that she began to cry. Plaintiff's manager Ms. Twertsky saw her crying and asked what happened. When Plaintiff explained what Angel did, instead of comforting Plaintiff and reprimanding Angel, Ms. Twertsky told Plaintiff that she was being "unprofessional" and tried to shame her into tolerating the toxic environment.

25. As she was receiving no support from her manager, Plaintiff sent a message to WMI's President and CEO Motty Landau, explaining what had happened between her and Angel and expressing her concerns about working with him. Mr. Landau never responded to Plaintiff's email message.

26. Plaintiff tried to avoid any interactions with Angel, but it was extremely difficult, as they worked in the same office. Plaintiff became anxious every time she walked into the office because she knew that she would eventually have to interact with Angel.

27. It soon became evident to Angel that Plaintiff was intentionally avoiding him. One day Angel snuck up behind Plaintiff and whispered in her ear, "you can't stay mad at me forever." Plaintiff was disgusted at Angel touching her ear, and fearful that he knew she was intentionally avoiding him.

28. On September 11, 2022, Plaintiff informed Defendant WMI that she could not continue to work there under these conditions. Plaintiff hoped that the threat of her wanting to quit would force Defendants to address the issue with Angel.

29. However, on, or about, September 14, 2022, Ms. Twertsky packed up all of Plaintiff's personal belongings, and texted her a message asking her to pick up her belongings and return her office key and parking garage access clicker, effectively terminating Plaintiff's employment with Defendants.

30. Sometime in September 2022, after Plaintiff left Defendant WMI's and RAB's employ, a Spanish speaking cleaning lady called her hysterically crying and informed her that Angel had tried to rape her as she was cleaning the offices, and she wanted to know what she should do, as she was undocumented and didn't want to get deported.

31. The cleaning lady told Plaintiff that Angel accosted her in an empty room, pulled down his pants, held her hands firmly in place and tried to disrobe her. Angel stopped his advancement only after the cleaning lady began to scream.

32. The cleaning lady stated that someone from Defendants' office ultimately called the police, but the police officers did not speak Spanish, and the cleaning lady did not speak English and was fearful of being deported, so she did not want to press charges against Angel. Plaintiff was not

6

surprised at this unfortunate incident, which substantiated her concern for her safety when she worked for Defendants.

## FIRST CLAIM FOR RELIEF
(Sexual Harassment/Hostile Work Environment under Title VII)

33. Plaintiff repeats and realleges each and every allegation contained in this Complaint as if fully set forth herein.

34. Defendants WMI and RAB have discriminated against Plaintiff on the basis of her gender in violation to Title VII by subjecting her to disparate treatment based upon her gender, including, but not limited to, subjecting her to sexual harassment, unwanted touching, assault, and a hostile work environment. As a result, Plaintiff was denied the opportunity to work in an employment environment free of unlawful discrimination.

35. These actions are in direct violation of Title VII of the Civil Rights Act of 1964, as amended.

36. As a direct and proximate result of Defendants WMI's and RAB's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

37. As a direct and proximate result of Defendant WMI's and RAB's unlawful discriminatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

38. Defendants WMI's and RAB's unlawful discriminatory and wrongful conduct constitutes a willful and wanton violation of Title VII, was outrageous and malicious, and was intended to injure Plaintiff and was committed with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

SECOND CLAIM FOR RELIEF
(Sexual Harassment/Hostile Work Environment under NYSHRL)

39. Plaintiff repeats and realleges each and every allegation contained in this Complaint as if fully set forth herein.

40. Defendants WMI and RAB have discriminated against Plaintiff on the basis of her gender in violation of the N.Y. Executive Law § 296 by subjecting her to disparate treatment based upon her gender, including, but not limited to, subjecting her to sexual harassment, unwanted touching, assault, and a hostile work environment. As a result, Plaintiff was denied the opportunity to work in an employment environment free of unlawful discrimination.

41. These actions are in direct violation of the N.Y. Executive Law § 296, as amended.

42. As a direct and proximate result of Defendants WMI's and RAB's unlawful discriminatory conduct in violation of the N.Y. Executive Law § 296, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

43. As a direct and proximate result of Defendant WMI's and RAB's unlawful discriminatory conduct in violation of the N.Y. Executive Law § 296, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

44. Defendants WMI's and RAB's unlawful discriminatory and wrongful conduct constitutes a willful and wanton violation of the N.Y. Executive Law § 296, was outrageous and malicious, and was intended to injure Plaintiff and was committed with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

THIRD CLAIM FOR RELIEF
(Sexual Harassment/Hostile Work Environment under NYCHRL)

45. Plaintiff repeats and realleges each and every allegation contained in this Complaint as if fully set forth herein.

46. Defendants WMI and RAB have discriminated against Plaintiff on the basis of her gender in violation to N.Y. Administrative Code, Title 8 by subjecting her to disparate treatment based upon her gender, including, but not limited to, subjecting her to sexual harassment, unwanted touching, assault, and a hostile work environment. As a result, Plaintiff was denied the opportunity to work in an employment environment free of unlawful discrimination.

47. These actions are in direct violation of the N.Y. Administrative Code, Title 8, as amended.

48. As a direct and proximate result of Defendants WMI's and RAB's unlawful discriminatory conduct in violation of the N.Y. Administrative Code, Title 8, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

49. As a direct and proximate result of Defendant WMI's and RAB's unlawful discriminatory conduct in violation of the N.Y. Administrative Code, Title 8, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

50. Defendants WMI's and RAB's unlawful discriminatory and wrongful conduct constitutes a willful and wanton violation of the N.Y. Administrative Code, Title 8, was outrageous and malicious, and was intended to injure Plaintiff and was committed with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

FOURTH CLAIM FOR RELIEF
(Aiding and Abetting Discrimination under NYSHRL and NYCHRL)

51. Plaintiff repeats and realleges each and every allegation contained in this Complaint as if fully set forth herein.

52. The foregoing acts were aided and abetted by Defendants MOTTY LANDAU and JUDY TWERTSKY in violation of the NYSHRL and NYCHR.

53. Defendant MOTTY LANDAU's and JUDY TWERTSKY's conduct was outrageous and committed with malice, or with reckless disregard of Plaintiff's rights. Plaintiff has suffered and continue to suffer substantial loss of past and future earnings and other employment benefits. Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, emotional and mental pain, and physical manifestations therefrom, loss of enjoyment of life, loss of self-esteem, and loss of civil rights. Due to the severity of Defendants' conduct which shocks the conscience, and in order to prevent a repetition of such unlawful conduct, Plaintiff is entitled to an award of past and future pecuniary losses, with prejudgment interest, past and future non-pecuniary losses, and punitive damages, where appropriate, in amounts to be determined at trial.

FIFTH CLAIM FOR RELIEF
(Negligent Supervision and Training)

54. Plaintiff repeats and realleges each and every allegation contained in this Complaint as if fully set forth herein.

55. Defendants WMI and RAB, its agents, servants, and/or employees owed a duty to Plaintiff, including, but not limited to, a duty to adequately supervise, train, hire, and discipline their agents, servants, employees, in order to protect Plaintiff from being unnecessarily discriminated against, or other wised harmed by its agents, servants, and/or employees.

56. Defendants WMI and RAB, its agents, servants, and/or employees failed to exercise reasonable care in performing the aforementioned duties.

57. Defendant's failure to properly train, supervise, and discipline its agents, employees, and servants, were the substantial and proximate cause of Plaintiff's harm.

58. Defendant's conduct was outrageous and committed with malice, or with reckless disregard of Plaintiff's rights.  Plaintiff has suffered and continues to suffer substantial loss of past and future earnings and other employment benefits.  Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, emotional and mental pain, and physical manifestations therefrom, loss of enjoyment of life, loss of self-esteem, and loss of civil rights. Due to the severity of Defendant's conduct which shocks the conscience, and in order to prevent a repetition of such unlawful conduct, Plaintiff is entitled to an award of past and future pecuniary losses, with prejudgment interest, past and future non-pecuniary losses, in amounts to be determined at trial.

SIXTH CLAIM FOR RELIEF
(Negligent Infliction of Emotional Distress)

59. Plaintiff repeats and realleges each and every allegation contained in this Complaint as if fully set forth herein.

60. Defendants WMI and RAB had a duty to hire, supervise, and retain qualified employees who would not place Plaintiff in foreseeable harm by causing her to suffer emotional distress.

61. Defendants breached this duty by causing Plaintiff to suffer emotional distress injury leading to her constructive discharge.

62. Defendants' negligence in not properly managing and disciplining its employees was the proximate cause of the Plaintiff's injury without any fault on the Plaintiff's part contributing thereto.

## SEVENTH CLAIM FOR RELIEF
(Intentional Infliction of Emotional Distress)

63 Plaintiff repeats and realleges each and every allegation contained in this Complaint as if fully set forth herein.

64. Defendants' conduct was outrageous and committed with malice, or with reckless disregard of Plaintiff's rights. Plaintiff has suffered and continues to suffer substantial loss of past and future earnings and other employment benefits. Plaintiff suffered and continues to suffer severe and lasting embarrassment, humiliation, emotional and mental pain, and physical manifestations therefrom, loss of enjoyment of life, and loss of self-esteem. Due to the severity of Defendant's conduct which shocks the conscience, and in order to prevent a repetition of such unlawful conduct, Plaintiff is entitled to an award of past and future pecuniary losses, with prejudgment interest, past and future non-pecuniary losses, and punitive damages, where appropriate, in amounts to be determined at trial.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the Defendant as follows:

a) As and for the causes of action enumerated above, Plaintiff demands judgment against the Defendants in an amount to be determined by a jury, plus interest;

b) Together with punitive and exemplary damages in an amount to be determined at trial;

c) Award litigation costs and disbursements to Plaintiff, including but not limited to, reasonable attorney's fees in this action; and

d) Such other and further relief as this Court may deem just and proper.

Dated: November 6, 2024
New York, NY

                                        FLORESTAL LAW FIRM, PLLC
                                      Attorneys for Plaintiff

                                      By:s/_____
                                           Marcel Florestal, Esq.
                                           48 Wall Street, Suite 11
                                           New York, NY 10005
                                           Tel: (212) 918-4416
                                           marcel@florestallaw.com